FUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CABREA M. McGRADY,

                                    Plaintiff,

        -v-

ANDREW SAUL,
Commissioner of Social Security,

                                    Defendant.

18-CV-1187-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 12).

Plaintiff Cabrea M. McGrady brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   For the following reasons, McGrady's motion (Dkt. No. 9) is granted, the Commissioner's motion (Dkt. No. 10) is denied, and the case is remanded.

## BACKGROUND

On November 7, 2014, McGrady filed protectively an application for SSI, alleging disability as of February 15, 2014, due to right knee and ankle problems, arthritis, a ruptured right Achilles tendon, post traumatic stress syndrome, and depression. (Tr. 172,

195).[1]  Her application was denied on January 28, 2015.  (Tr. 15, 59).  On March 18, 2015, McGrady requested a hearing before an administrative law judge ("ALJ").  A video hearing was held before ALJ Elizabeth Elmer, on March 23, 2017 and August 4, 2017. (Tr. 33, 40).  The ALJ presided over the hearing from Falls Church, Virginia, while McGrady appeared from Buffalo, New York.  McGrady appeared without the assistance of counsel or a representative.  A vocational expert also appeared.  On August 28, 2017, the ALJ issued a decision finding McGrady not disabled. (Tr. 15-28). That decision became final when on September 5, 2018, the Appeals Council denied her request for review.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record,

---

[1]      References to "Tr." are to the administrative record in this case.

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed

- 4 -

in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that McGrady has not engaged in substantial gainful activity since September 23, 2014, her application date.  (Tr. 17). At step two, the ALJ concluded that McGrady has the following severe impairments: history of right Achilles tendon tear status post right ankle arthroscopy, and bilateral knee chondromalcia status-post right knee arthroscopy. *Id*. At step three, the ALJ found that McGrady does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 20).  Before proceeding to step four, the ALJ assessed McGrady's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work … She can lift, carry, push, and/or pull up to ten pounds occasionally and less than ten pounds frequently, and can sit for up to six hours and stand and/or walk for up to two hours in an eight-hour workday. However, after sitting for forty-give minutes at one time she requires the freedom to briefly stand for one to two minutes without going off task or leaving the workstation. She can occasionally climb ramps and stairs, balance, stoop, crouch, and operative [sic] foot controls, and can tolerate occasional exposure to vibrations. However, she is unable to climb ladders, ropes, or scaffolds or work around unprotected heights or dangerous moving mechanical parts, and can never kneel or crawl. The claimant would further be off-task up to five percent of an eight-hour workday in addition to normal breaks.

(Tr. 20-26).  Proceeding to step four, the ALJ found that McGrady is unable to perform past relevant work.  (Tr. 26).  At step five, the ALJ found that, considering McGrady's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, namely, Order Clerk, Document Preparer, and Weight Checker.    (Tr. 27).  Accordingly, the ALJ concluded that McGrady is not disabled under the Act.  (Tr. 28).

IV.    *McGrady's Challenges*

McGrady argues that this case must be remanded because: (1) the only medical opinion relied upon by the ALJ was stale; and (2) the ALJ did not adequately develop the record with regard to McGrady's scheduled third surgery.   The Court agrees with McGrady and finds that the case must be remanded.

An ALJ may not rely on medical source opinions that are stale when determining the claimant's RFC. *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) (citing *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (remanding for staleness when ALJ relied on consultative examination that occurred prior to multiple surgeries over five years)); *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015); aff'd, 652 F. App'x 25 (2d Cir. 2016).   A medical opinion may be stale if it is remote in time and does not account for a claimant's deteriorating condition. See, e.g., *Jones v. Comm'r of Soc. Sec.*, 10-CV-5831, 2012 U.S. Dist. LEXIS 119010 (E.D.N.Y. Aug. 22, 2016) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition."); *Hawkins v. Colvin*, 15-CV-

- 7 -

6394, 2016 U.S. Dist. LEXIS 148380 (W.D.N.Y. Oct. 26, 2016) ("the consultative medical examination report was 'stale' at the time of the ALJ's decision, insofar as the report was issued prior to plaintiff's degenerative disc disease becoming symptomatic."); *Girolamo v. Colvin*, 13-CV-06309, 2014 U.S. Dist. LEXIS 72749 (W.D.N.Y. May 28, 2014) (ALJ improperly relied upon opinions of consulting physicians rendered "prior to [p]laintiff's second surgery in 2011 and the related diagnostic testing associated therewith.").   In considering whether a medical opinion is stale, courts have frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of the claimant's deteriorating condition.  See, e.g., *Biro*, 335 F. Supp. 3d at 472 ("The Court finds the ALJ's consideration of Plaintiff's knee impairment unsupported by substantial evidence. First, [the consultative examiner's] opinion, which was rendered nearly five years before the ALJ's decision and before Plaintiff's September 2013 knee injury and two subsequent surgeries, was stale and not based on the complete medical record."); see also *Jeffords v. Comm'r of Soc. Sec.*, No. 17-CV-1085-MJR, 2019 WL 1723517, at *7 (W.D.N.Y. Apr. 18, 2019) (remanding for staleness when ALJ relied "almost exclusively, on medical opinions … prior to plaintiff's 2013 spinal surgery and 2014 fall"); *Morales v. Comm'r of Soc. Sec.*, No. 17 CV-341-FPG, 2019 WL 1109572, at *6 (W.D.N.Y. Mar. 11, 2019) (remanding where ALJ relied on consultative examiner's opinion that did not address "multiple hernia repair surgeries" and was rendered before two additional surgeries); *Pagano v. Comm'r of Soc. Sec.*, No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding.").

Here, the only medical opinion relied upon by the ALJ in determining McGrady's RFC was that of consultative examiner, Dr. Hongbiao Liu, M.D., following a single examination of McGrady on January 10, 2015. (Tr. 272). The ALJ assigned significant weight to Dr. Liu's opinion. (Tr.23). The ALJ acknowledged, however, that McGrady underwent both ankle and knee surgeries following Dr. Liu's opinion. *Id.*

The ALJ erred in relying on the opinion of Dr. Liu as it was stale. The record shows that McGrady's condition deteriorated subsequent to Dr. Liu's opinion. She underwent two significant surgeries subsequent to Dr. Liu's opinion, and was scheduled for a third surgery. She underwent surgery to repair her torn right Achilles on March 10, 2015. (Tr. 277-279). She then underwent arthroscopic right knee surgery on February 16, 2016. (Tr. 305). On March 14, 2017, she scheduled surgery on her left knee. (Tr. 321).

In addition to these surgeries, there is other evidence that McGrady's condition deteriorated after Dr. Liu's opinion. Even after surgery, at an examination in September 28, 2015, McGrady's range of motion remained limited. (Tr. 303). McGrady required tramadol to manage the pain as well. (Tr. 304). After her second surgery, in February 2016, she demonstrated a slow gate, walked with a limp, and had difficulty getting out of her chair on examination. (Tr. 309-10). She also reported that she had recently fallen. *Id.* Her condition was largely unchanged at follow-ups in June, July, September, and November 2016. (Tr. 307, 308, 316, 317). In addition, Dr. Liu's opinion did not account for McGrady's subsequent left leg problems. She began having issues with her left leg in 2016. (Tr.307). In July 2016, there was crepitus with active motion. *Id.* By March 2017, a MRI revealed chondromalacia patella, and arthroscopic surgery on her left knee was

planned.  (Tr. 319).  At the time of Dr. Liu's examination, McGrady's complaint was limited to her right ankle and knee only.

Because Dr. Liu's opinion was stale, the ALJ could not rely on it.  Consequently, because Dr. Liu's opinion was the only medical opinion upon which the ALJ relied, there is now a gap in the record necessitating a remand.  See *Smith v. Saul*, No. 17-CV-6641-CJS, 2019 WL 2521188, at *2 (W.D.N.Y. June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence."); see also *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (rejecting medical opinion left gaps in the record triggering duty to develop the record).  "As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations ..., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing."  *Nanartowich v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6096P, 2018 WL 2227862, at *11–12 (W.D.N.Y. May 16, 2018) (quoting *Gross v. Astrue*,No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014)); see also *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("In the absence of a medical opinion to support the ALJ's finding ... the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

On remand, the ALJ should also develop the record regarding McGrady's third surgery (this time on her left knee), which according to McGrady's counsel, occurred in October 2017.

**CONCLUSION**

For the reasons stated, McGrady's motion for judgement on the pleadings (Dkt.

No. 9) is granted, the Commissioner's motion for judgement on the pleadings (Dkt. No.

10), is denied, and the case is remanded.

The Clerk of Court shall take all steps necessary to close the case.

**SO ORDERED.**

Dated:        May 15, 2020
              Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge